NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SILVIA MARIE MASSEY, *Appellant.*

No. 1 CA-CR 15-0322
FILED 12-24-2015

Appeal from the Superior Court in Maricopa County
No.  CR2013-002197-004
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Mays Law Office, PLLC, Phoenix
By Wendy L. Mays
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Patricia K. Norris joined.

---

**G O U L D**, Judge:

¶1         Silvia Marie Massey ("Defendant") appeals from her conviction and sentence for conspiracy to commit possession of marijuana for sale.  Defendant's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), advising this Court that after a search of the entire appellate record, no arguable ground exists for reversal.  Defendant was granted leave to file a supplemental brief *in propria persona*, and did not do so.

¶2         Our obligation in this appeal is to review "the entire record for reversible error."  *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and 13-4033(A)(1) (West 2015).[1]  Finding no reversible error, we affirm.

**FACTS AND PROCEDURAL HISTORY[2]**

¶3         On January 17, 2013, the Maricopa County Sheriff's Office conducted a reverse sting operation.  Using a confidential informant, officers set up a deal for the informant to sell 200 pounds of marijuana to a drug trafficking organization.  The confidential informant was provided with a vehicle loaded with the marijuana that she then drove to a pre-determined location to await instructions from her contact who was

---

[1]     Unless otherwise specified, we cite to the current version of the applicable statutes because no revisions material to this decision have occurred.

[2]     We view the evidence in the light most favorable to sustaining the convictions and resulting sentences.  *See State v. Guerra*, 161 Ariz. 289, 293 (1989).

brokering the drug with the buyers. The informant was also outfitted with a body wire so officers could monitor the sale.

¶4        After meeting her contact, who was also working as an informant, the confidential informant was directed to drive to a residence. This information was relayed over radio to officers involved in the sting operation so they could set up surveillance on the residence before the drug transaction took place. Sheriff's department officers monitored the residence as the confidential informant pulled into the garage of the residence.

¶5        Once the vehicle with the marijuana was parked in the garage, two men began to unload the marijuana into the kitchen and weigh it. An older woman, the broker for the buyers, was also present at the residence when the informants arrived. About a half an hour after the marijuana was brought to the residence, a white Dodge Caravan pulled up to the residence. The van was parked in the garage and Defendant and her co-defendant, Coleman, entered the house. While Coleman, Defendant, the buyer's broker, and the two informants counted the money, the two men who had been weighing the marijuana began loading it into the white Dodge Caravan. The transaction complete, the two informants left the residence; Coleman and Defendant also left shortly thereafter.

¶6        Once the confidential informants were clear of the residence, the surveillance officers were directed to conduct a traffic stop of the white Dodge Caravan. Defendant and Coleman were the sole occupants of the van. Upon approaching the van, the officers could smell a strong odor of marijuana coming from the vehicle. A canine unit was brought in and the dog alerted on the passenger side sliding door towards the rear of the van. The officers searched the van and found what appeared to be bundles of marijuana covered with some jackets in the back of the van. The total weight of marijuana recovered from the van was about 96 pounds. Officers also found Defendant's purse containing about $42,000 in cash wrapped in a plastic grocery bag.

¶7        Defendant was arrested and charged with one count of conspiracy to commit possession of marijuana for sale, a class 2 felony, one count of possession of marijuana for sale, a class 2 felony, and one count of money laundering in the second degree, a class 3 felony. Prior to trial Defendant joined in Coleman's motion to suppress the drugs and money recovered from the van. Defendant also filed a motion to sever her trial from Coleman's trial. The court held evidentiary hearings on both motions and denied both motions.

¶8 Defendant went to trial. At the close of the State's case, the court granted Defendant's Rule 20 motion as to the money laundering count, and submitted the remaining charges to the jury. The jury found Defendant guilty of the conspiracy charge, but not guilty of the possession charge. The jury further found the State had not proven its alleged aggravating factors. Accordingly, the court suspended Defendant's sentence and placed Defendant on probation for 3 years. Defendant timely appealed.

## DISCUSSION

¶9 We have read and considered counsel's brief, carefully searched the entire record for reversible error and found none. *Clark*, 196 Ariz. at 541, ¶ 49. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and substantial evidence supported the finding of guilt. Defendant was present and represented by counsel at all critical stages of the proceedings. At sentencing, Defendant and her counsel were given an opportunity to speak and the court imposed a legal sentence.

¶10 Defendant joined in co-defendant Coleman's motion to suppress evidence obtained as a result of the traffic stop. The court held an evidentiary hearing and ultimately denied the motion.

¶11 Officers must have reasonable suspicion of criminal activity to conduct an investigatory stop of a vehicle. *State v. Fornof*, 218 Ariz. 74, 76, ¶ 5 (App. 2008). The totality of the circumstances must "raise a justifiable suspicion that the particular individual to be detained is involved in criminal activity." *State v. Graciano*, 134 Ariz. 35, 37 (1982). We review whether there was reasonable suspicion to justify a stop de novo; however, we defer to the trial courts findings of fact. *Fornof*, 218 Ariz. at 76, ¶ 5.

¶12 At the hearing, the State produced evidence that officers observed the white Dodge Caravan pull into the garage of the house where the marijuana reverse sting took place. Officers were informed by a confidential informant involved in the sting that the marijuana had been loaded into the van at the house before the van left. The van was followed as it left the residence until the stop was conducted; additionally, the license plate of the van had been recorded as it entered the house. These facts create a reasonable suspicion that the occupants of the van had been involved in criminal activity; therefore the stop was justified.

¶13 Defendant also filed a motion to sever her case from Coleman's. Defendant argued she would be prejudiced by the fact that the

weight of evidence against Coleman was more substantial than the evidence against her and would result in a harmful "rub-off" effect. The court held an evidentiary hearing and denied Defendant's motion.

¶14 To further the interest of judicial economy, "joint trials are the rule rather than the exception." *State v. Murray*, 184 Ariz. 9, 25 (1995). In seeking a severance, a defendant must show "'compelling prejudice against which the trial court [is] unable to protect'" absent severance. *Id.* (quoting *State v. Cruz*, 137 Ariz. 541, 544 (1983)). We review the trial court's decision to grant or deny severance for an abuse of discretion. *Id.*

¶15 The court did not abuse its discretion in finding a severance was not warranted. Coleman's defense was not antagonistic with Defendant's, because both defendants claimed to have no involvement in the drug transaction. Additionally, the evidence presented at trial was facially incriminating to both Coleman and Defendant. Thus, Defendant did not show the requisite compelling prejudice to obtain a severance.

¶16 Counsel's obligations pertaining to Defendant's representation in this appeal have ended. Counsel need do nothing more than inform Defendant of the status of the appeal and her future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Defendant shall have thirty days from the date of this decision to proceed, if she so desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama